# Ex Parte Communications During
# FCC Rulemaking

Ex parte communications by White House officials to Federal Communications Commission commissioners that advocate positions on the FCC rulemaking proceeding to evaluate financial interest and syndication rules would be permissible.

According to FCC regulations, as interpreted by the FCC General Counsel, communications by the White House must be disclosed in the FCC rulemaking record if they are of substantial significance and clearly intended to affect the ultimate decision.

Although solicitation of the views of White House officials by FCC commissioners would be permissible and need not be included in the rulemaking record, any response by White House officials to such a solicitation would be subject to the same disclosure requirements that apply to unsolicited communications.

January 14, 1991

MEMORANDUM OPINION FOR THE DEPUTY
COUNSEL TO THE PRESIDENT

This memorandum responds to your request that we answer certain questions regarding ex parte communications between White House officials and Commissioners of the Federal Communications Commission ("FCC") in connection with the FCC's ongoing rulemaking proceeding to evaluate its financial interest and syndication rules relating to television network involvement in the programming marketplace. Specifically, you have asked (1) whether it is permissible for White House officials to contact FCC Commissioners to advocate a position on this rulemaking; (2) whether any such communications would be subject to FCC disclosure requirements; and (3) whether it would be permissible for FCC Commissioners to solicit the views of White House officials and whether any such communications would be subject to the FCC disclosure requirements.

We conclude that the communications by White House officials would be permissible and, according to FCC regulations, they must be disclosed in the FCC rulemaking record if they are of substantial significance and clearly intended to affect the ultimate decision. Solicitations of the views of White

1

House officials by FCC Commissioners would be permissible and need not be included in the rulemaking record. Any response by White House officials to such a solicitation, however, would be subject to the same disclosure requirements that apply to unsolicited communications.

## I.

We believe it is clearly permissible, as a matter of general administrative law, for White House officials, including senior members from the Council of Economic Advisors and officials from the Office of the Vice President, Office of Management and Budget, and Office of White House Counsel, to contact FCC Commissioners to advocate a position on this rulemaking. This conclusion is compelled by *Sierra Club v. Costle*, 657 F.2d 298 (D.C. Cir. 1981), the leading ex parte contacts case under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559, 701-706.

In *Sierra Club*, an Environmental Protection Agency ("EPA") rulemaking was challenged as procedurally defective in a variety of ways, including that the decisionmaking was influenced by an "undocketed meeting . . . attended by the President, White House staff, other high ranking members of the Executive Branch, as well as EPA officials, and which concerned the issues and options presented by the rulemaking." *Id.* at 404. In holding that the meeting was permissible and need not have been "docketed" (*i.e.*, a summary placed in EPA's rulemaking record),[1] the D.C. Circuit Court of Appeals

> recognize[d] the basic need of the President and his White House staff to monitor the consistency of executive agency regulations with Administration policy. He and his White House advisers surely must be briefed fully and frequently about rules in the making, and their contributions to policymaking considered. The executive power under our Constitution, after all, is not shared — it rests exclusively with the President.

*Id.* at 405. The court not only concluded that "[t]he authority of the President to control and supervise executive policymaking is derived from the Constitution," *id.* at 406, but added that

> the desirability of such control is demonstrable from the practical realities of administrative rulemaking. Regulations such

---

[1] The *Sierra Club* holding on "docketing" did not modify the APA case law providing that purely factual and "conduit" (*i.e.*, from interested parties outside the government) information provided in the course of such communications should be included in agency rulemaking records. *See Contacts Between the Office of Management and Budget and Executive Agencies Under Executive Order No. 12,291*, 5 Op. O.L.C. 107 (1981).

2

as those involved here demand a careful weighing of cost, environmental, and energy considerations. They also have broad implications for national economic policy. Our form of government simply could not function effectively or rationally if key executive policymakers were isolated from each other and from the Chief Executive. Single mission agencies do not always have the answers to complex regulatory problems. An over-worked administrator exposed on a 24-hour basis to a dedicated but zealous staff needs to know the arguments and ideas of policymakers in other agencies as well as in the White House.

*Id.* (footnotes omitted).

Just as the court found in *Sierra Club* that it was permissible under the APA for the President and other White House officials to meet with EPA officials in an effort to influence the results of an EPA rulemaking, we believe it is permissible for White House officials to contact FCC Commissioners in an effort to influence the results of an FCC rulemaking. The constitutional and administrative rationales set forth in *Sierra Club* are fully applicable to the FCC rulemaking on financial interest and syndication rules.[2]

*Sierra Club* makes it clear that, in addition to the general requirements of the APA, any more specific statutory requirements must be considered. *Id.* at 406-07. The only such requirements that we are aware of that might apply in the present situation are those contained in the laws and regulations governing FCC proceedings. The FCC's notice of proposed rulemaking expressly states that the FCC has determined that ex parte communications are permissible in this rulemaking proceeding. *See* 55 Fed. Reg. 11,222, 11,223 (1990) ("After June 13, 1990, the proceeding will become a non-restricted proceeding, in which *ex parte* presentations will be permissible, subject to the disclosure requirements set forth in the Commission's rules.") The FCC's ex parte communication regulations, 47 C.F.R. Subpart H, apply by their terms to ex parte communications from any person outside the FCC, expressly including presentations from government officials. *See* 47 C.F.R. §

[2] *Sierra Club* is not distinguishable on the basis that the FCC, unlike the EPA, might be viewed as an "independent agency." *Sierra Club* is the leading construction of the APA on ex parte contacts during rulemaking, and the APA clearly applies equally to the FCC and the EPA. *See* 5 U.S.C. § 551(1). Thus, the *Sierra Club* rationale concerning "the practical realities of administrative rulemaking," 657 F.2d at 406, applies fully to all agency rulemaking, whether done by a purely executive or "independent" agency. Indeed, the only exception to its holdings on White House contacts that *Sierra Club* specifically identifies is where the contacts "directly concern the outcome of adjudications or quasi-adjudicatory proceedings," thus implying that all rulemaking is covered by the main holding *Id.* at 407. Moreover, whatever the constitutionality of restricting the removal of the heads of "independent agencies," there is no doubt that the President has the constitutional authority to inform (directly or through his staff) an "independent agency" of the Administration's program, in an effort to coordinate policy within the executive branch. *See Morrison v. Olson*, 487 U.S. 654 (1988). Accordingly, the President retains authority to attempt to influence rulemaking decisions by "independent agencies" in the ways endorsed in *Sierra Club*.

3

1.1206(a)(1)-(3) note 1 ("[P]resentations from members of Congress or their staff or from other agencies or branches of the Federal Government or their staff that are of substantial significance and clearly intended to affect the ultimate decision shall be treated as *ex parte* presentations . . . ."). Accordingly, we conclude that ex parte communications by White House officials in connection with this rulemaking are permissible under the FCC ex parte regulations.

Although ex parte communications to FCC Commissioners by White House officials are thus legally permissible, we note the current White House policy guidance applicable to contacts with independent regulatory agencies like the FCC. *See* Memorandum for White House Staff, from C. Boyden Gray, Counsel to the President, *Re: Prohibited Contacts with Agencies.* That guidance states:

> As a general rule, no member of the staff should make an *ex parte* contact with a regulatory agency in regard to any particular matter pending before that agency, regardless of whether the proceedings are deemed to be rulemaking or adjudicative, when such a contact may imply preferential treatment or the use of influence on the decision-making process.

> . . . White House staff members should avoid even the mere appearance of interest or influence — and the easiest way to do so is to avoid discussing matters pending before the independent regulatory agencies with interested parties and avoid making *ex parte* contacts with agency personnel. Should an occasion arise . . . where it appears necessary [for White House staff] to discuss general policy matters with the staff of an independent regulatory agency, to avoid any appearance of impropriety, [the White House staff individual] should first consult with the Office of the Counsel to the President to determine whether such contact would be appropriate under the circumstances.

*Id.* at 1-2.

## II.

You have also asked whether, if ex parte communications to FCC Commissioners by White House officials are permissible, the communications must be publically disclosed: *i.e.*, included in the FCC's rulemaking record. Although *Sierra Club* makes it clear that such disclosure is not required as a matter of general administrative law, *see* 657 F.2d at 404-08, the FCC regulations on ex parte communications provide for disclosure of certain

4

communications of that nature. We have consulted the FCC General Counsel's Office to ascertain the FCC's interpretation of its regulations.[3] The following discussion is based on that interpretation.[4]

As noted above, the FCC's notice of proposed rulemaking states that "*ex parte* presentations will be permissible" in this proceeding, "subject to the disclosure requirements set forth in the Commission's rules." 55 Fed. Reg. at 11,223. This statement is consistent with the FCC regulations, which provide that all informal rulemaking proceedings, except proceedings on allotment of specific radio or television channels, are "non-restricted proceedings," *see* 47 C.F.R. § 1.1206(b)(1), in which "*ex parte* presentations are permissible . . . if [certain enumerated] disclosure requirements are met." 47 C.F.R. § 1.1206(a). The regulations specify which communications during a non-restricted proceeding from government sources outside the FCC should be viewed as ex parte communications that must be included in the rulemaking record:

> Unless otherwise exempted under Section 1.1204, presentations from members of Congress or their staff or from other agencies or branches of the Federal Government or their staff that are of substantial significance and clearly intended to affect the ultimate decision shall be treated as *ex parte* presentations and placed (if oral, a written summary of the presentation shall be prepared and placed) in the record of the proceeding by Commission staff or in accordance with the procedures set forth in Section 1.1206(a)(1)-(3).

47 C.F.R. § 1.1206(a)(1)-(3) note 1. Thus, unless otherwise exempted under section 1.1204(b), all ex parte communications from government officials or employees that "are of substantial significance and clearly intended to affect the ultimate decision" must be placed in the rulemaking record. If the communications are oral, they may be placed in the record either by the means of a written summary prepared by Commission staff or by a written memorandum submitted by the ex parte "communicator" on the day of the communication. 47 C.F.R. § 1.1206(a).

Accordingly, the FCC regulations require the placement in the FCC rulemaking record of a memorandum summarizing any ex parte communication by a White House official to an FCC Commissioner in which the White House official advocates a position on this rulemaking, so long as the communication is "of substantial significance and clearly intended to affect the

---

[3] We consulted David H. Solomon, Assistant General Counsel, Administrative Law Division.

[4] We do not address in this memorandum the authority of the President to direct the FCC to change its regulations.

ultimate decision." The regulations apply by their terms to all parts of the government and make no exception for communications from White House officials. Nor would any of the section 1.1204(b) exemptions appear to be applicable. In particular, the FCC does not believe that exemption (5) is available. *See* 47 C.F.R. § 1.1204(b)(5) (exempting presentations "to or from an agency or branch of the Federal Government or its staff [that] involve[] a matter over which that agency or branch and the Commission share jurisdiction"). In the view of the FCC General Counsel's Office, the exemption for agencies that "share jurisdiction" pertains only to other federal agencies that exercise statutory authority that overlaps with the FCC's authority; it is not addressed to a government entity that might supervise the FCC. Accordingly, the White House does not, within the meaning of the exemption, "share jurisdiction" with the FCC over financial interest and syndication rules. We believe that the FCC's interpretation of exemption (5) is reasonable.

## III.

Finally, you have asked whether it would be permissible for an FCC Commissioner to solicit the views of White House officials and whether any such solicitation would be subject to the FCC disclosure requirements. We are unaware of any statutory or regulatory provisions that would prohibit such a solicitation or require that it be included in the rulemaking record. The conclusions reached above regarding *Sierra Club* should apply equally to a solicitation by an FCC Commissioner, because nothing in the court's rationale suggested that the protection of ex parte White House communications should be "one-way": *i.e.*, protecting communications by White House officials but not to them.

Moreover, nothing in the FCC regulations would preclude such a solicitation (indeed, the regulations contemplate solicitations, *see* 47 C.F.R. § 1.1206(a)(3)) or require that it be docketed. The FCC General Counsel's Office has advised us that solicitations are permissible and whether they are recorded in the rulemaking record is discretionary. Any communication by a White House official in response to a solicitation, however, would be subject to disclosure under the same standards governing unsolicited communications. *See* 47 C.F.R. §§ 1.1204(b) note, 1.1206(a)(3), 1.1206(a)(1)-(3) note 1.

## CONCLUSION

Ex parte communications by White House officials to FCC Commissioners that advocate positions on the ongoing FCC rulemaking proceeding to evaluate financial interest and syndication rules would be permissible. According to FCC regulations, as interpreted by the FCC General Counsel's Office, such communications must be disclosed in the FCC rulemaking record

if they are of substantial significance and clearly intended to affect the ultimate decision. Solicitations of the views of White House officials by FCC Commissioners would be permissible and need not be included in the rulemaking record. Any response by White House officials to such a solicitation, however, would be subject to the same disclosure requirements that apply to unsolicited communications.

JOHN O. MCGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
